Edgewater Servs., Inc. v. Epic Logistics, Inc., 2009 NCBC 20.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| COUNTY OF WAKE | 05 CVS 1971 |

EDGEWATER SERVICES, INC.    )
and LUCINDA DOSHER,    )
    )
    Plaintiffs,    )
    )    **ORDER**
    v.    )
    )
EPIC LOGISTICS, INC., DON AND    )
BARBARA SHERRILL, and    )
JOLIE ANNE OSGOOD,    )
    )
    Defendants.    )

THIS MATTER, designated a complex business and exceptional case and assigned to the undersigned Special Superior Court Judge by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to Rules 2.1 and 2.2 of the General Rules of Practice for the Superior and District Courts, came to be heard upon motions for summary judgment (the "Motion(s)"), pursuant to Rule 56 of the North Carolina Rules of Civil Procedure ("Rule(s)"), filed by Defendants Epic Logistics, Inc. ("Epic"), Don and Barbara Sherrill (collectively, the "Sherrills") and Jolie Anne Osgood ("Osgood"); and

THE COURT, having considered the Motions, the arguments and submissions of counsel, pleadings, discovery and all other admissible appropriate matters of record, CONCLUDES that the Motions should be GRANTED in part and DENIED in part for the reasons stated below.

*J.W. Bryant Law Firm, PLLC by John Walter Bryant, Esq. for Plaintiffs Edgewater Services, Inc. and Lucinda Dosher.*

*Cranfill, Sumner & Hartzog, LLP by Dan M. Hartzog, Esq. and Stephanie A. Gaston, Esq. and Teague, Rotenstreich, Stanaland, Fox & Holt, PLLC by Lyn K. Broom, Esq. for Defendants Epic Logistics, Inc. and Don and Barbara Sherrill.*

*Bailey & Dixon, LLP by Dayatra T. King, Esq. for Defendant Jolie Anne Osgood.*

Jolly, Judge.

## I.

## PROCEDURAL BACKGROUND

[1]     Plaintiffs Edgewater Services, Inc. ("ESI") and Lucinda Dosher ("Dosher"), (collectively, the "Plaintiffs") filed a Complaint against Epic, the Sherrills, and Osgood (collectively, the "Defendants") on February 14, 2005, in Wake County Civil Superior Court.  Plaintiffs' various claims ("Claim(s)") against the Defendants include: First Claim for Relief (Trade Secrets Protection Act); Second Claim for Relief (Misappropriation of Proprietary Confidential Information); Third Claim for Relief (Breach of Contract -- Employment and Non-Compete Agreement); Fourth Claim for Relief (Breach of Contract -- Joint Venture Agreement); Fifth Claim for Relief (Conversion); Sixth Claim for Relief (Breach of Fiduciary Duty); Seventh Claim for Relief (Constructive Fraud); Eighth Claim for Relief (Tortious Interference with Contract -- Employment and Non-Compete Agreement); Ninth Claim for Relief (Tortious Interference with Contract); Tenth Claim for Relief (Interference with Prospective Economic Advantage); Eleventh Claim for Relief (Defamation); Twelfth Claim for Relief (Civil Conspiracy); Thirteenth Claim for Relief (Unfair and Deceptive Trade Practices); and Fourteenth Claim for Relief (Punitive Damages).

[2] Defendant Osgood previously filed a Motion for Partial Summary Judgment (Osgood's "First Rule 56 Motion") as to the Plaintiffs' Third Claim (Breach of Contract -- Employment and Non-Compete Agreement). Subsequently, by Order dated October 22, 2007, the court granted Osgood's First Rule 56 Motion by dismissing Plaintiffs' Third Claim to the extent it sought recovery from Osgood for breach of (a) a non-competition covenant and (b) a non-solicitation covenant contained in the employment agreement ("Employment Agreement") between Osgood and Plaintiff. The court denied Osgood's First Rule 56 Motion to the extent that Plaintiff's Third Claim sought recovery from Osgood for breach of a non-disclosure covenant contained in the Employment Agreement.

[3] By way of their Motions, the Defendants Epic and the Sherrills seek summary judgment dismissal of all Plaintiffs' Claims against them.

[4] By way of her Motion, Defendant Osgood seeks summary judgment dismissal of Plaintiffs' First, Second, Ninth, Tenth, Twelfth and Fourteenth Claims against her.

[5] All briefs and oral arguments have been submitted in support of and opposition to the Motions, and the Motions are ripe for determination.

[6] Unless otherwise indicated herein, the material facts reflected in paragraphs 7 through 19, 27 through 29 and 58 of this Order exist, are undisputed[1] and are pertinent to the issues raised by the Motions.

---

[1] It is not proper for a trial court to make findings of fact in determining a motion for summary judgment under Rule 56 of the North Carolina Rules of Civil Procedure ("Rule(s)"). However, it is appropriate for a Rule 56 order to reflect material facts that the court concludes exist and are not disputed, and which support the legal conclusions with regard to summary judgment. *Hyde Ins. Agency v. Dixie Leasing*, 26 N.C. App. 138 (1975).

II.

FACTUAL BACKGROUND

[7]     Plaintiff ESI is a corporation organized and existing under the laws of the State of North Carolina with its principal place of business in Raleigh, Wake County, North Carolina.

[8]     Plaintiff Dosher is a citizen and resident of Johnston County, North Carolina.

[9]     Defendant Epic is a corporation organized and existing under the laws of the State of North Carolina with its principal place of business in Smithfield, Johnston County, North Carolina.

[10]     Defendants Don and Barbara Sherrill are citizens and residents of Iredell County, North Carolina.

[11]     Defendant Osgood is a citizen and resident of Wake County, North Carolina.

[12]     Epic was incorporated in North Carolina in January 1998, and initially was owned by Don Sherrill.  Epic is a third-party logistics company that negotiated transporting packages and pricing for accounts, handling mostly less than truckload ("LTL") shipping.  In 2001, Jim Davis ("Davis") joined Epic as its operations manager and a forty percent shareholder of Epic.

[13]     In 2001, Joe Dosher, the then-president of ESI, contacted Epic concerning helping move certain LTL business for a client because Edgewater typically dealt with truckload ("TL") freight.  Dosher and Sherrill met to discuss their respective businesses, and the result was an oral agreement that Epic would pay ESI a thirty percent

commission for referring LTL business to Epic. Pursuant to the agreement, ESI was supposed to sell TL for itself and try to sell LTL for Epic.

[14] ESI requested that Epic sign a written agreement stating Epic would be obligated to offer ESI all of its TL shipments; however, ESI refused to sign such an agreement. Instead, the parties operated under the oral agreement, which is alleged by ESI to have constituted a joint venture, from 2001 to 2004.

[15] In June 2003, Don Sherrill and Joe Dosher met for lunch in Smithfield, North Carolina, to discuss the general lack of LTL business coming from ESI sales personnel and the pricing related to ESI's TL services, which was limiting Epic's referrals to ESI. At this time, however, Epic and ESI were having some of the most profitable months of their arrangement.

[16] In 2003, Joe Dosher was diagnosed with pancreatic and liver cancer, which caused his death on February 15, 2004. At that time, Osgood, who was Dosher's daughter, was employed at ESI. Prior to Osgood's employment at ESI, Osgood had been convicted of grand theft of motor vehicles in Florida, and she had pled guilty to multiple felony charges. Despite Osgood's criminal problems, Joe Dosher gave his daughter a job at ESI the same year she plead guilty to the criminal violations. It was Joe Dosher's plan that his wife, Lucinda, succeed him in the business. Lucinda alleges that when Osgood learned of her father's plan of succession for ESI, her interest in the success of ESI as a business disappeared.

[17] Subsequently, ESI and Dosher allege that they learned that Osgood had been misrepresenting her itinerary and daily whereabouts. They allege that further investigation revealed that Osgood had misused ESI business credit cards and

submitted false expense statements. In April 2004, Osgood was observed removing materials from ESI offices. Plaintiffs allege the materials were customer lists, pricing information and carrier lists from ESI office files.

[18]   In March 2004, Davis received a call from Osgood in which she stated she was thinking about making a career change. A meeting was set up for Friday, April 23, 2004, between Davis, Don Sherrill, and Osgood. Osgood then approached ESI's two key operations employees and shareholders, Harold D. "Chip" Jones, II ("Jones") and Wilson Ferrell ("Ferrell"), and requested that they accompany her to the meeting with Epic. Osgood notified Davis of her plan to bring Jones and Ferrell to the meeting. Unbeknownst to everyone except Jones and Ferrell, Dosher had instructed Ferrell to record the April 23, 2004 meeting. The parties disagree concerning the accuracy of the transcript of the recording, and about whether Epic and Osgood attempted to lure Ferrell and Jones away from ESI at this meeting and hire them to work at Epic.

[19]   On May 17, 2004, Davis wrote a letter to Osgood welcoming her as an employee of Epic. On May 18, 2004, Osgood quit her job at ESI and began her employment with Epic as Director of Sales. Her duties were to help maintain Epic's LTL business and add TL shipping. Following Osgood's leaving ESI, Dosher and Ferrell received an e-mail from an ESI vendor, which was a forward of an e-mail originally sent by Osgood. The latter e-mail notified the vendor of Osgoods' resignation from ESI, provided her contact information at Epic, and stated that Osgood would contact the vendor regarding its future LTL needs. Shortly thereafter, Epic applied for and was granted a broker's license in July 2004, so that Epic could offer nationwide TL service under its own authority.

III.

## THE MOTIONS -- DISCUSSION

[20]   Under Rule 56(c), summary judgment is to be rendered "forthwith" if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.  When the forecast of evidence demonstrates that the plaintiff cannot satisfy an essential element of a claim or overcome an affirmative defense established by the defendant, summary judgment should be granted.  *Grayson v. High Point Dev. Ltd. P'ship*, 175 N.C. App. 786, 788 (2006).  The court will examine the Motions in the context of each of Plaintiffs' respective Claims.

A.

## First Claim (Trade Secrets Protection Act)

[21]    The Plaintiffs contend that Defendants unlawfully acted together to misappropriate ESI's trade secrets, in the form of "formulae, patterns, programs, devices, compilations of information, methods, techniques and processes," as defined by North Carolina's Trade Secrets Protection Act, N.C. Gen. Stat. § 66-152, *et seq.* (the "Act") (hereafter, references to the North Carolina General Statutes will be to "G.S.").

[22]    Defendants contend that Plaintiffs have not forecast sufficient evidence that Defendants misappropriated any trade secrets, on the grounds that ESI's carrier files, rates, and customer files do not constitute "trade secrets" under the Act.  They further contend that even if the information were to be considered trade secrets, there is no evidence these trade secrets were misappropriated by Defendants.

[23]    A threshold question in any action involving allegations of misappropriation of trade secrets is whether the information in question constitutes a trade secret under the Act.  *Combs & Assocs. v. Kennedy*, 147 N.C. App. 362, 369 (2001).

[24]    The Act defines what constitutes a "trade secret."  G.S. 66-152(3) provides that:

> "Trade secret" means business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:
>
>     (a)    Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by person who can obtain economic value from its disclosure or use; and
>
>     (b)    Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

[25]    Our courts have articulated the following six factors that should be considered when determining whether information is a trade secret:

    (a)    The extent to which the information is known outside the business;

    (b)    The extent to which it is known to employees and others involved in the business;

    (c)    The extent of measures taken to guard the secrecy of the information;

    (d)    The value of the information to the business and its competitors;

    (e)    The amount of effort or money expended in developing the information; and

(f)     The ease or difficulty with which the information could properly be acquired or duplicated by others.

*Combs* at 369-70.

[26]    To support a claim for misappropriation of trade secrets, a complaining plaintiff must identify the trade secret with sufficient particularity to enable a defendant to have notice of what he is accused of misappropriating, and for a court to determine whether misappropriation has or is threatened to occur.  *Visionair, Inc. v. James*, 167 N.C. App. 437 (2004).

[27]    In the instant case, Plaintiffs' Complaint fails to identify with sufficient particularity what trade secrets have been misappropriated in violation of the Act. During discovery, Plaintiffs identified carrier files, TL and LTL rates, and customer files as the "trade secrets" Plaintiffs contend were misappropriated.[2]  In her deposition, Plaintiff Dosher conceded that the only thing in the carrier file that might be considered a "trade secret" would be the rate information.[3]  With respect to rates, she testified that rates change as variables such as the cost of fuel and insurance change, and that they even can change depending on the economy or how the industry itself is doing.[4] Dosher further testified that when a customer becomes aware of ESI's rate schedule, the customer is not required to sign anything agreeing to keep that information confidential.[5]  Plaintiffs do not dispute Dosher's testimony as reflected in this paragraph, and it therefore is deemed to be undisputed for purposes of the Motions.  In addition,

---

[2] Dosher Dep., Vol. I, p. 37; Dosher Dep., Vol. II, p. 51.
[3] Dosher Dep., Vol. II, pp. 67-68.
[4] *Id.*, pp. 121-22.
[5] *Id.*, pp. 71-72.

although ESI only communicates a quote or rate to its customer, it does not instruct that customer to refrain from sharing that rate information with others.[6]

[28]    The carrier files and rate information are kept in an unlocked file room, accessible to anyone.  Carrier files, rate information, and customer files are not kept in any locked containers.[7]  Dosher conceded in her testimony that anybody could access the information in the carrier files and rate files "if they knew where to go and what they were looking for."[8]  She also testified that the three ESI operations employees at that time would have had access to these files.[9]  Dosher's testimony in these regards is undisputed.  Plaintiffs do not dispute Dosher's testimony as reflected in this paragraph, and it therefore is deemed to be undisputed for purposes of the Motions.

[29]    With respect to customer files, ESI's salespersons keep customer files in their respective offices for the customers with which they deal.  Items that would be maintained in a customer file include:  "[n]ame, address, frequency, lanes, rates, pretty much everything about them, volumes, what they're -- what type of freight it is . . . [t]he contract person, phone numbers, e-mail addresses."[10]

[30]    Misappropriation of a trade secret under the Act requires a showing by substantial evidence that the person against whom relief is sought both: (a) knows or should have known of the trade secret; and (b) has had a specific opportunity to acquire it for disclosure or use or has acquired, disclosed, or used it without the express or implied consent or authority of the owner.  G.S. 66-155.

---

[6] *Id.*
[7] *Id.*, pp. 83-84.
[8] *Id.*
[9] *Id.*, p. 83.
[10] ESI (Dosher) Dep. pp. 118-19.

[31]     Plaintiffs' carrier files, rates, and customer files do not constitute "trade secrets," and information contained therein is such that can be learned directly from carriers and customers of ESI.  In addition, ESI does not have sufficient safeguards, protocols, or procedures in place to protect the secrecy of such information from persons outside ESI or within ESI.  Further, the information that makes up Plaintiffs' alleged trade secrets is information that is compiled in the course of doing business.  There is no evidence in the record, nor any allegation by Plaintiffs, that ESI expended any significant amount of effort or money in developing the information, outside of the cost of doing business.  For these reasons, Plaintiffs' carrier files, rates, and customer files do not constitute "trade secrets" pursuant to the Act.[11]

[32]     In light of the court's conclusion that the information complained of by Plaintiffs in this Claim does not constitute trade secrets under the Act, Defendants are entitled to summary judgment in their favor as to such Claim.  Further analysis is not required with regard to whether the record supports Plaintiffs' contentions that there was "misappropriation" of information, as defined by the Act.

---

[11] In *Byrd's Lawn & Landscaping, Inc. v. Smith*, 142 N.C. App. 371 (2001) the court, although noting that North Carolina courts have not answered the precise question of whether confidential cost history records qualify as a trade secret, relied upon the language of the Tenth U.S. Circuit Court of Appeals in *Black, Sivalls & Bryson, Inc. v. Keystone Steel Fabrication, Inc.*, 584 F.2d 946, 952 (10th Cir. 1978), which held that confidential data regarding operating and pricing policies can also qualify as trade secrets because the ability to predict a competitor's bid with reasonable accuracy would give a distinct advantage to the possessor of that information, so long as the information is not easily acquired by others who had not performed similar services on the same properties from which the cost history information came. Plaintiffs here attempt to apply the same reasoning to what Plaintiffs consider their own confidential data regarding operating and proving policies that can also quality as trade secrets because the information would in fact give Epic an advantage over ESI.  However, *Byrd* is distinguishable from the instant matter because there the information considered to be trade secrets was maintained in detail by the plaintiff's president in a personal notebook over a period of seventeen years and was not shared with any employees.  *Id.* at 374.  Such is not the case in the instant matter.

B.

## Second Claim (Misappropriation of Proprietary Confidential Information)

[33]    With regard to this Claim, there exist one or more genuine issues of material fact, and Defendants are not entitled to summary judgment in their favor.

C.

## Third Claim (Breach of Contract -- Employment and Non-Compete Agreement).

[34]    This Claim has been limited by the court's Order of October 22, 2007, which granted partial summary judgment in favor of Defendant Osgood by dismissing Plaintiffs' Third Claim to the extent it sought recovery from Osgood for alleged violations of non-competition and non-solicitation covenants of Osgood's Employment Agreement with ESI.

[35]    In light of the court's prior dismissal of Plaintiffs' Claims against Osgood arising from non-competition and non-solicitation covenants of Osgood's Employment Agreement, there also exist no material issues of fact as to said allegations as they related to Defendants Epic and the Sherrills; and said Defendants are entitled to summary judgment in their favor as to said Claims.

[36]    With regard to the Plaintiffs' Claim for violation of a non-disclosure covenant of Osgood's Employment Agreement, there exist one or more genuine issues of material fact, and Defendants are not entitled to summary judgment in their favor.

D.

## Fourth Claim (Breach of Contract -- Joint Venture Agreement)

[37]    With regard to this Claim, there exist one or more genuine issues of material fact, and Defendants are not entitled to summary judgment in their favor.

E.

Fifth Claim (Conversion)

[38]  This Claim makes allegations only against Defendant Osgood.

[39]  With regard to this Claim, Defendant Osgood has not moved for summary judgment disposition, and no Rule 56 determination is required.

F.

Sixth Claim (Breach of Fiduciary Duty)

[40]  This Claim makes allegations only against Defendant Osgood.

[41]  With regard to this Claim, Defendant Osgood has not moved for summary judgment disposition, and no Rule 56 determination is required.

G.

Seventh Claim (Constructive Fraud)

[42]  This Claim makes allegations only against Defendant Osgood.

[43]  With regard to this Claim, Defendant Osgood has not moved for summary judgment disposition, and no Rule 56 determination is required.

H.

Eighth Claim (Tortious Interference with Contract --
Employment and Non-Compete Agreement)

[44]  This Claim makes allegations only against Defendants Epic and the Sherrills.  It largely is redundant of Plaintiffs' First Claim (Trade Secrets Protection Act) and Plaintiffs' Third Claim (Breach of Contract -- Employment and Non-Compete Agreement).  The primary difference appears to be that in their Third Claim, Plaintiffs alleged that Defendants Epic and the Sherrills "conspired, aided and abetted" [12]

---

[12] Compl. ¶ 81.

Defendant Osgood in the breach of her Employment Agreement; and in this Eighth Claim, Plaintiffs allege that Epic and the Sherrills "induced"[13] Osgood to breach the same agreement.

[45]    The material substantive allegations of this Eighth Claim are that Epic and the Sherrills induced Osgood to (a) compete with ESI, (b) solicit employees of ESI and (c) misappropriate trade secrets belonging to ESI.

[46]    In its October 22, 2007 Order, and in its discussion, *supra*, with regard to the allegations in Plaintiffs' Third Claim to the effect that Osgood had a duty not to compete with ESI or solicit employees of ESI, the court has concluded that the Employment Agreement between Osgood and ESI was not enforceable with regard to its non-compete and non-solicitation covenants.  Further, in its discussion, *supra*, with regard to the allegations in Plaintiffs' First Claim to the effect that Defendants misappropriated trade secrets belonging to ESI, the court has concluded that the information sought to be protected by Plaintiffs did not constitute a trade secret under the Act.

[47]    Plaintiffs cannot base this Eighth Claim upon unenforceable covenants in the Employment Agreement or upon unsustainable trade secrets contentions. Defendants Epic and the Sherrills therefore are entitled to summary judgment in their favor with regard to Plaintiffs' Eighth Claim.

I.

Ninth Claim (Tortious Interference with Contract)

[48]    With regard to this Claim, there exist one or more genuine issues of material fact, and Defendants are not entitled to summary judgment in their favor.

---

[13] *Id.* at ¶ 107.

### J.

### Tenth Claim (Interference with Prospective Economic Advantage)

[49] With regard to this Claim, there exist one or more genuine issues of material fact, and Defendants are not entitled to summary judgment in their favor.

### K.

### Eleventh Claim (Defamation)

[50] This Claim makes allegations only against Defendants Epic and Osgood.[14]

[51] With regard to this Claim, there exist one or more genuine issues of material fact, and Defendants are not entitled to summary judgment in their favor.

### L.

### Twelfth Claim (Civil Conspiracy)

[52] With regard to this Claim, there exist one or more genuine issues of material fact, and Defendants are not entitled to summary judgment in their favor.

### M.

### Thirteenth Claim (Unfair and Deceptive Trade Practices)

[53] With regard to this Claim, there exist one or more genuine issues of material fact, and Defendants are not entitled to summary judgment in their favor.

### N.

### Fourteenth Claim (Punitive Damages)

[54] In order for the Plaintiffs to prevail on a claim for punitive damages, they must prove that one or more of the following aggravating factors was present: (a) fraud, (b) malice or (c) willful or wanton conduct; and that the aggravating factor(s) proximately

caused the injury. G.S. 1D-15(a)(1)-(3). Here, the aggravating factors alleged by Plaintiffs are that the Defendants' conduct was malicious, willful and wanton.

[55] In order to support a claim for punitive damages, the Plaintiffs also are required to prove existence of each aggravating factor by "clear and convincing evidence." G.S. 1D-15(b).

[56] "Malice" is defined as "a sense of personal ill will toward the claimant that activated or incited the defendant to perform the act or undertake the conduct that resulted in harm to the claimant." G.S. 1D-5(5).

[57] "Willful or wanton conduct" is defined as "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm." G.S. 1D-5(7).

[58] In the instant case, Plaintiffs' basis for the punitive damages claim against Epic and the Sherrills is based primarily on "a feeling" by Dosher and the circumstances surrounding the hiring of Osgood by Epic. Dosher testified as a Rule 30(b)(6) deponent representative of ESI that she did not know why the Sherrills would bear Plaintiffs personal ill will, but that she thinks "they were greedy and trying to get something that they didn't have to pay for."[15] Plaintiffs do not dispute Dosher's testimony as reflected in this paragraph, and it therefore is deemed to be undisputed for purposes of the Motions.

[59] In order to support a claim for punitive damages, the plaintiff must offer direct or circumstantial evidence sufficient to take the case out of the realm of

---

[14] Osgood has not moved for summary judgment in her favor with regard to this Claim.
[15] ESI (Dosher) Dep., p. 134.

speculation and conjecture and into the field of legitimate inference from established facts. *Parker v. Wilson*, 247 N.C. 47 (1957). Here, the court is forced to conclude that the forecast evidence is not sufficient to meet the requirement that it be "clear and convincing" as to either the aggravating element of malice or of willful or wanton conduct.

[60] Accordingly, there exist no genuine issues of material fact, and Defendants are entitled to summary judgment in their favor as to said Claim.

NOW THEREFORE, based upon the foregoing CONCLUSIONS, it is ORDERED that:

[61] With regard to Plaintiffs' First Claim for Relief (Trade Secrets Protection Act); Eighth Claim for Relief (Tortious Interference with Contract -- Employment and Non-Compete Agreement) and Fourteenth Claim for Relief (Punitive Damages), the motions for summary judgment by Defendants Epic Logistics, Inc., Don and Barbara Sherrill, and Jolie Anne Osgood are GRANTED, and said Claims are DISMISSED.

[62] With regard to Plaintiffs' Second Claim for Relief (Misappropriation of Proprietary Confidential Information); Fourth Claim for Relief (Breach of Contract -- Joint Venture Agreement); Ninth Claim for Relief (Tortious Interference with Contract); Tenth Claim for Relief (Interference with Prospective Economic Advantage); Eleventh Claim for Relief (Defamation); Twelfth Claim for Relief (Civil Conspiracy) and Thirteenth Claim for Relief (Unfair and Deceptive Trade Practices), the motions for summary judgment by Defendants Epic Logistics, Inc., Don and Barbara Sherrill, and Jolie Anne Osgood are DENIED.

[63]    To the extent Plaintiffs' Third Claim for Relief (Breach of Contract --

Employment and Non-Compete Agreement) seeks recovery from Defendants Epic and

the Sherrills for breach of non-competition and non-solicitation covenants contained in

the Employment Agreement between Osgood and Plaintiff ESI, the motion for summary

judgment by Defendants Epic Logistics, Inc. and Don and Barbara Sherrill is

GRANTED, and said Claims are DISMISSED as to said Defendants.

[64]    To the extent Plaintiff's Third Claim for Relief (Breach of Contract --

Employment and Non-Compete Agreement) seeks recovery from all Defendants for

breach of a non-disclosure covenant contained in the Employment Agreement, the

motions for summary judgment by Defendants Epic Logistics, Inc., Don and Barbara

Sherrill, and Jolie Anne Osgood are DENIED.

[65]    This civil action will be set for jury trial in due course.

SO ORDERED, this the 11th day of August, 2009.