NORMAN S. BECK, PLAINTIFF v. THE CITY OF DURHAM, ORVILLE POWELL, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS CITY MANAGER OF THE CITY OF DURHAM, J. W. McNEIL, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS CHIEF OF POLICE OF THE CITY OF DURHAM, AND P. LAMONT EWELL, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS CITY MANAGER OF THE CITY OF DURHAM, DEFENDANTS

No. COA01-1407

(Filed 3 December 2002)

### 1. Civil Procedure— Rule 12(b)(6) dismissal—outside matters considered

There was no error in the dismissal of an employment harassment complaint where the order and judgment referred to Rule 12(b)(6) but an affidavit and a previous federal judgment were considered. Rule 12(b) expressly provides for the disposal of claims under Rule 56 when outside matters are considered and it was not necessary for the court to specifically refer to Rule 56. Furthermore, it is clear that the court used Rule 12(b) and Rule 56 interchangeably.

### 2. Pleadings— timeliness—amended complaint—filed during hearing on motion to dismiss

An amended complaint was timely filed even though plaintiff filed his amended complaint four minutes after the beginning of the hearing on defendant's motion to dismiss where defendants did not present a record of objections or a transcript indicating whether the trial court took issue with the amended complaint. N.C.G.S. § 1A-1, Rule 15(a).

### 3. Statutes of Limitation and Repose— defense pled— amended, unverified complaint not sufficient

An amended, unverified complaint was not sufficient to establish a genuine issue for trial where defendants had properly pled a statute of limitations defense.

### 4. Immunity— governmental—affidavit that claims not insured—no forecast of coverage

The trial court's dismissal of employment harassment claims against the City based on governmental immunity was proper where defendant presented the affidavit of a City employee that the City did not have insurance coverage for any of the matters in the complaint and plaintiff did not come forward with a forecast of evidence that immunity was waived.

BECK v. CITY OF DURHAM

[154 N.C. App. 221 (2002)]

**5. Immunity— governmental—police chief and city manager— official capacity**

The Durham police chief and city manager were public officials immune from suit for tortious acts committed in their official capacity.

**6. Immunity— governmental—intentional torts**

Determination of governmental immunity is unnecessary if an intentional tort is alleged, since neither public officials nor public employees have immunity from suit in their individual capacities.

**7. Employer and Employee— constructive wrongful discharge—not generally recognized**

There was no error in dismissing a constructive wrongful discharge claim where there was no termination payment provision in an employment contract. This tort has not been recognized in North Carolina except in that context.

**8. Emotional Distress— intentional infliction—negative opinion of plaintiff—not outrageous**

The trial court did not err by dismissing plaintiff's claim for intentional infliction of emotional distress against a city manager where the city manager spoke negatively about plaintiff after plaintiff retired as a police officer and became a private investigator. Plaintiff did not demonstrate the necessary level of extreme and outrageous conduct.

**9. Wrongful Interference— contract and prospective advantage—tortious interference—subjective view of plaintiff— not sufficiently malicious**

The trial court did not err by granting summary judgment for defendant city manager on claims for interference with prospective advantage and interference with contract where defendant told plaintiff's client that she "could do better." This simply expressed defendant's subjective view of plaintiff's abilities and did not express the required malicious motive.

**10. Collateral Estoppel and Res Judicata— prior federal claim—different issues**

A 42 U.S.C. 1983 claim for selective waiving of governmental immunity was not barred by res judicata even though a prior federal claim had been dismissed where the claims were based on different factual and legal issues.

BECK v. CITY OF DURHAM

[154 N.C. App. 221 (2002)]

**11. Constitutional Law— due process—equal protection— municipal payment of selective claims**

 The trial court did not err by granting summary judgment for the City of Durham on due process and equal protection claims based on the City's practice of paying damages on some tort claims but not others. The allegations were insufficient to establish that the City was arbitrary and capricious.

 Appeal by plaintiff from an order and judgment entered 26 June 2001 by Judge Orlando F. Hudson, Jr. in Durham County Superior Court. Heard in the Court of Appeals 20 August 2002.

 *Mitchell Law Offices, P.A., by Donald R. Von Hagen; Foil Law Offices, by Beth Poinsett Von Hagen, for plaintiff-appellant.*

 *Newsom, Graham, Hedrick & Kennon, P.A., by Joel M. Craig and Thomas H. Lee, Jr., for defendant-appellees.*

HUNTER, Judge.

 Norman S. Beck ("plaintiff") appeals from the Durham County Superior Court's order in favor of the City of Durham ("the City"), Orville Powell ("Powell"), P. Lamont Ewell ("Ewell"), and J. W. McNeil ("McNeil") (collectively "defendants") granting dismissal of plaintiff's claims for (1) constructive wrongful discharge against the City and McNeil; (2) negligent promotion, supervision, and retention against the City and Powell; (3) negligent infliction of emotional distress ("NIED") against all four defendants; (4) intentional infliction of emotional distress ("IIED") against the City, McNeil, and Ewell; (5) tortious interference with contract against the City and Ewell; (6) tortious interference with prospective advantage against the City and Ewell; and (7) violation of due process and equal protection against the City. We affirm.

 The relevant allegations of plaintiff's complaint are as follows: Plaintiff served as a police officer for the Durham Police Department ("DPD") from 1979 to 1996. During his employment, the City employed Powell as City Manager. The City also employed McNeil as a supervisor in the DPD and later promoted him to Chief of Police in 1992. Neither of these men are currently employed by the City. Ewell was subsequently employed as City Manager.

 In 1989, plaintiff was assigned to serve as a traffic supervisor. His immediate supervisor was McNeil. While under McNeil's supervision,

plaintiff was ordered to void a speeding ticket for a friend of McNeil's—an action that was in direct violation of DPD policies and state law. When plaintiff refused and attempted to expose McNeil's improper actions, McNeil's treatment of him became hostile and harassing. McNeil retaliated against plaintiff by (1) assigning plaintiff to on-call status twenty-four hours a day, seven days a week for six years with no relief, (2) taking away plaintiff's office, and (3) requiring plaintiff to work longer hours by assigning his unit to walking patrol. Also, plaintiff suffered racial harassment from McNeil, a black man, and other black police officers because plaintiff, a white and Jewish male, was referred to as "Mark Furman" and subjected to jokes about Jewish people. Ultimately, plaintiff requested a transfer to regular patrol duty as a line police sergeant in March of 1995. McNeil granted this request.

Shortly after being transferred, plaintiff sustained a work-related injury that precluded him from returning to regular patrol duty. Plaintiff requested a light-duty assignment. However, McNeil failed to arrange a meeting between plaintiff and the personnel department to discuss plaintiff's medical disability—another action in direct violation of policies and procedures established by the City and DPD regarding an employee's rights to continued employment after a work-related injury. As a result, plaintiff was placed on a permanent midnight shift in the DPD records department, which was not the type of assignment commonly given to police officers recovering from an injury. Defendant subsequently retired on 31 October 1996, terminating his employment with the DPD.

Following his retirement, plaintiff started a private investigative business. However, after Ewell (in his position as City Manager) told one of plaintiff's clients that she " 'could do better' " than plaintiff's services, that client terminated her contract with plaintiff.

On 22 November 1999, plaintiff filed a complaint in Durham County Superior Court alleging two federal claims under Title 42, Section 1981 and Section 1983 of the United States Code, as well as the first six state law claims previously mentioned against the City and against McNeil, Powell, and Ewell individually and in their official capacity. Defendants removed the action to the United States District Court for the Middle District of North Carolina. Thereafter, defendants filed a motion to dismiss plaintiff's action. On 29 November 2000, the middle district court dismissed plaintiff's federal claims, and after declining to exercise supplemental jurisdiction over

plaintiff's state law claims, dismissed those claims without prejudice. Plaintiff did not appeal the judgment.

Plaintiff reasserted his state law claims on 29 December 2000 in another complaint filed in Durham County Superior Court. In support of these claims, plaintiff's complaint contained all of the allegations previously mentioned, as well as allegations that (1) the work conditions created by McNeil forced him into retirement, (2) the City and Powell negligently promoted, supervised, and retained McNeil as Chief of Police despite having knowledge of his actions, and (3) Ewell induced a client to terminate her contract with plaintiff's private investigative business. The complaint further alleged that the City had waived its governmental immunity by purchasing liability insurance.

On 12 April 2001, defendants filed a motion seeking dismissal of plaintiff's first six claims pursuant to Rule 12(b)(6) or, in the alternative, pursuant to Rule 56 of the North Carolina Rules of Civil Procedure. In support of their motion, defendants submitted a certified copy of the order and judgment from the middle district court and the affidavit of Laura W. Henderson ("Henderson"), an employee of the City who was familiar with the City's insurance policies. In her affidavit, Henderson stated that the City had no liability insurance that provided coverage for any of the matters alleged by plaintiff in his complaint.

On 12 April 2001, defendants noticed the hearing on their motion to dismiss for 31 May 2001 at 9:30 a.m. At 9:34 a.m. on 31 May 2001, plaintiff filed an amended complaint and served it during the hearing. The amended complaint contained a new claim alleging the City's violation of plaintiff's rights to due process and equal protection, as well as additional allegations to support plaintiff's other six claims. Nevertheless, defendants' motion to dismiss was granted in an order and judgment filed 26 June 2001. Plaintiff appeals the court's dismissal of all his claims against all defendants, with the exception of his claim for NIED against Ewell (as stated in plaintiff's brief).

I.

**[1]** The first issue presented to this Court is whether the trial court properly dismissed plaintiff's action pursuant to either Rule 12(b)(6) or Rule 56.

Rule 12(b) provides, *inter alia*, that a trial court's review of a 12(b)(6) motion to dismiss requires a determination of "whether, as a

matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Miller v. Nationwide Mutual Ins. Co.*, 112 N.C. App. 295, 300, 435 S.E.2d 537, 541 (1993). Rule 12(b) further provides that if "matters outside the [complaint] are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . ." N.C. Gen. Stat. § 1A-1, Rule 12(b) (2001). Thus, in treating a motion as one for dismissal under Rule 56, the trial court, when viewing the evidence in the light most favorable to the non-movant, must determine whether the moving party has shown, through pleadings and affidavits, that there is no genuine issue of material fact requiring a trial and that he is entitled to judgment as a matter of law. *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998).

Here, defendants' motion to dismiss stated that defendants "move, pursuant to Rule 12(b)(6), or in the alternative pursuant to Rule 56, . . . for an order dismissing [plaintiff's] action in its entirety." The subsequent court order and judgment granting defendants' motion to dismiss stated:

> Defendants moved to dismiss all of Plaintiff's claims pursuant to Rule 12(b)(6) . . . on the grounds that Plaintiff has failed to state a claim upon which relief can be granted. In the alternative, Defendants moved to dismiss all of Plaintiff's claims pursuant to Rule 12(b) and submitted a certified copy of the judgment and order dismissing Plaintiff's federal claims . . . and the Affidavit of Laura Henderson.

Plaintiff argues the trial court erred in considering the previous federal court judgment and Henderson's affidavit because the current order and judgment only made reference to Rule 12(b)(6) and Rule 12(b), not to Rule 56. However, since Rule 12(b) expressly provides for the disposal of claims under Rule 56 when outside matters are considered, it was not necessary for the trial court to specifically reference Rule 56 in its order and judgment. Furthermore, it is clear from the text of the order and judgment that the trial court used Rule 12(b) and Rule 56 interchangeably to refer to the alternative grounds for dismissal as stated in defendants' motion. Therefore, we conclude the order and judgment was a grant of dismissal under Rule 56 where the court considered matters outside the pleadings.

BECK v. CITY OF DURHAM

[154 N.C. App. 221 (2002)]

## II.

The second issue, which arises from defendants' brief, is in regards to the timeliness of (A) plaintiff's amended complaint and (B) several of plaintiff's claims.

### A. Amended Complaint

[2] Defendant argues that plaintiff failed to exercise his right to amend his complaint in a timely manner. Based on the circumstances in this case, we disagree.

Rule 15 of the North Carolina Rules of Civil Procedure provides, in pertinent part, that "[a] party may amend his pleading once as a matter of course at *any time* before a responsive pleading is served . . . ." N.C. Gen. Stat. § 1A-1, Rule 15(a) (2001) (emphasis added). For purposes of this rule, our Court has held that "[a] motion to dismiss . . . is not a 'responsive pleading' under Rule 15(a) and so does not itself terminate plaintiff's unconditional right to amend a complaint under Rule 15(a)." *Johnson v. Bollinger*, 86 N.C. App. 1, 7, 356 S.E.2d 378, 382 (1987). The record in the instant case clearly indicates that plaintiff filed his amended complaint approximately four minutes after the hearing on defendants' motion to dismiss began. Prior to the hearing, defendants had only filed a motion to dismiss, which is not a responsive pleading. It is unlikely that the drafters of Rule 15(a) intended "any time" to encompass plaintiff serving his amended complaint during a hearing. Nevertheless, defendants' failure to present a record of objections to this last minute act by plaintiff or provide a verbatim transcript indicating whether the court took issue with the amended complaint compels this Court to conclude that in this case the complaint was timely filed.

### B. Statute of Limitations

[3] Additionally, defendants argue that several of the claims raised in plaintiff's amended complaint fail to allege any wrongful conduct by defendants within the applicable statute of limitations period. For the following reasons, we agree.

"The statute of limitations is 'inflexible and unyielding,' and the defendants are vested with the right to rely on it as a defense." *Staley v. Lingerfelt*, 134 N.C. App. 294, 299, 517 S.E.2d 392, 396 (1999) (citation omitted). In North Carolina, claims against defendants alleging personal injury are governed by a three-year statute of limitations. N.C. Gen. Stat. § 1-52(5) (2001). This limitations period also applies to

emotional distress claims, claims arising from the alleged wrongful conduct of public officials, and claims of alleged negligence. *See Fowler v. Valencourt*, 334 N.C. 345, 435 S.E.2d 530 (1993); *Waddle v. Sparks*, 331 N.C. 73, 85, 414 S.E.2d 22, 28 (1992). "The trial court has no discretion when considering whether a claim is barred by the statute of limitations." *Staley*, 134 N.C. App. at 299, 517 S.E.2d at 396.

All parties in the present case agree on the applicability of a three-year statute of limitations to plaintiff's first six claims; their only dispute is when that three-year period began to run with respect to several of the claims plaintiff raised against the City, McNeil, and Powell.[1] Defendants filed a motion to dismiss these claims alleging that they were entitled to such because "[p]laintiff's claims are clearly barred by . . . applicable statutes of limitations." Our courts have held that "[o]nce a defendant has properly pleaded the statute of limitations, the burden is then placed upon the plaintiff to offer a forecast of evidence showing that the action was instituted within the permissible period after the accrual of the cause of action." *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985). When forecasting evidence, plaintiff "may not rest upon the mere allegations or denials of his pleading," but must instead "set forth specific facts showing that there is a genuine issue for trial." N.C. Gen. Stat. § 1A-1, Rule 56(e) (2001).

In his complaint, plaintiff alleged that his injuries did not finally accrue or become known to him until 31 October 1996, which presumably gave him until Monday, 1 November 1999, to file his action. *See* N.C. Gen. Stat. § 1A-1, Rule 6(a) (2001). However, since defendants properly pled a statute of limitations defense in their motion to dismiss, the allegations in plaintiff's complaint alone were insufficient to establish a genuine issue for trial. *See Staley*, 134 N.C. App. at 299, 517 S.E.2d at 396 (recognizing that a statute of limitations defense is properly pled when raised by a defendant in a Motion for Summary Judgment instead of in a responsive pleading). Plaintiff cannot meet his burden of forecasting evidence by simply filing an amended, unverified complaint that contains additional allegations to support his claims. Thus, the court did not err in granting summary judgment on plaintiff's claims against (1) the City and Powell for negligent promotion, supervision, and retention; (2) McNeil and

---

1. Plaintiff's three claims against Ewell all clearly fall within the statutory time limit because they all arise out of events that occurred after plaintiff's retirement from the DPD.

**BECK v. CITY OF DURHAM**

[154 N.C. App. 221 (2002)]

Powell for NIED; and (3) McNeil for IIED. Plaintiff failed to set forth specific facts establishing that these claims were not barred by the statute of limitations.

## III.

**[4]** Third, this Court must determine whether plaintiff's remaining claims against any or all of the remaining defendants were properly dismissed due to governmental immunity.

"Under the doctrine of governmental immunity, a municipality is not liable for the torts of its officers and employees if the torts are committed while they are performing a governmental function . . . ." *Taylor v. Ashburn*, 112 N.C. App. 604, 607, 436 S.E.2d 276, 278 (1993). However, "[a]ny city may . . . waive its immunity from civil tort liability by purchasing liability insurance." *Id.* "Immunity is waived only to the extent that the city or town is indemnified by the insurance contract from liability for the acts alleged." *Combs v. Town of Belhaven*, 106 N.C. App. 71, 73, 415 S.E.2d 91, 92 (1992).

In the case *sub judice*, plaintiff argues that his remaining claims against the City (with the exception of his due process and equal protection claim) were erroneously dismissed because the City waived its governmental immunity by purchasing liability insurance or participating in a local government risk pool. Yet defendants, in moving for dismissal of the case, presented to the court Henderson's affidavit stating that the City did not waive its immunity. Once defendants, as the moving party, made and supported their motion for summary judgment, the burden once again shifted to plaintiff, as the non-moving party, to introduce evidence in opposition to the motion that set forth "specific facts showing that there is a genuine issue for trial." *See* N.C. Gen. Stat. § 1A-1, Rule 56(e). Plaintiff failed to come forward with a forecast of his own evidence of specific facts demonstrating that this immunity was waived. *See Amoco Oil Co. v. Griffin*, 78 N.C. App. 716, 718, 338 S.E.2d 601, 602 (1986). Thus, the court's dismissal of the remaining claims against the City was proper because defendants met their burden of showing that there was no genuine issue of a material fact regarding immunity. *See Moore v. Coachmen Industries, Inc.*, 129 N.C. App. 389, 393-94, 499 S.E.2d 772, 775 (1998).

**[5]** Furthermore, as stated previously, the doctrine of governmental immunity also bars actions against "public officials sued in their official capacity." *Messick v. Catawba County*, 110 N.C. App. 707, 714,

431 S.E.2d 489, 493 (1993) (citations omitted). The chief of police and the city manager are both considered public officials. *See generally Thompson Cadillac-Oldsmobile, Inc. v. Silk Hope Automobile, Inc.*, 87 N.C. App. 467, 471-72, 361 S.E.2d 418, 421 (1987). Thus, McNeil, Powell, and Ewell are also immune from suit for tortious acts allegedly committed in their official capacity.

IV.

**[6]** Having determined that defendants Ewell and McNeil are entitled to governmental immunity for acts performed in their official capacity, we next examine whether either or both of these defendants are potentially liable to plaintiff individually on the remaining claims against them.

Despite public officials being shielded from liability in their official capacities, "they remain *personally* liable for any actions which may have been corrupt, malicious or perpetrated outside and beyond the scope of official duties." *Locus v. Fayetteville State University*, 102 N.C. App. 522, 526, 402 S.E.2d 862, 865 (1991). Thus, in order to sustain a personal or individual capacity suit, "the plaintiff must initially make a *prima facie* showing that the defendant-official's tortious conduct falls within one of the immunity exceptions, *i.e.*, that the official's conduct is malicious, corrupt, or outside the scope of official authority." *Trantham v. Lane*, 127 N.C. App. 304, 307, 488 S.E.2d 625, 627 (1997). However, "if the plaintiff alleges an intentional tort claim, a determination [of governmental immunity] is unnecessary since, in such cases, neither a public official nor a public employee is immunized from suit in his individual capacity." *Wells v. North Carolina Dept. of Correction*, 152 N.C. App. 307, 320, 567 S.E.2d 803, 813 (2002).

The remaining claim against McNeil asserts constructive willful discharge. The remaining claims against Ewell assert IIED, tortious interference with contract, and tortious interference with prospective advantage. Since these are all intentional tort claims, McNeil and Ewell are potentially liable to plaintiff individually. Accordingly, we must now determine whether the trial court erred in granting summary judgment on plaintiff's claims alleging individual liability against (A) McNeil for constructive discharge, (B) Ewell for IIED, and (C) Ewell for tortious interference with contract and with prospective advantage.

**BECK v. CITY OF DURHAM**

[154 N.C. App. 221 (2002)]

A.  Constructive Wrongful Discharge

**[7]** Plaintiff argues the court erred in dismissing his claim against McNeil for constructive wrongful discharge in his individual capacity. However, North Carolina courts have yet to adopt this tort. *Graham v. Hardee's Food Systems*, 121 N.C. App. 382, 385, 465 S.E.2d 558, 560 (1996). Our courts have only recognized the validity of a claim for constructive discharge "in the context of interpreting whether constructive termination by [a plaintiff's] employer triggered the termination payment provision of [an] employment contract." *Doyle v. Asheville Orthopaedic Assocs., P.A.*, 148 N.C. App. 173, 177, 557 S.E.2d 577, 579 (2001), *disc. review denied*, 355 N.C. 348, 562 S.E.2d 278 (2002). Since this is not the factual scenario currently on appeal, we hold the court did not err in dismissing plaintiff's constructive wrongful discharge claim.

B.  IIED

**[8]** Next, plaintiff argues the court erred in dismissing his claim against Ewell for IIED in his individual capacity.

In an action for IIED, a plaintiff must prove "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another." *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981). This Court has defined the element of "extreme and outrageous conduct" as " ' "conduct [which] exceeds all bounds usually tolerated by decent society." ' " *Fieldcrest Cannon, Inc. v. Fireman's Fund Insurance Co.*, 124 N.C. App. 232, 252, 477 S.E.2d 59, 72 (1996) (citations omitted). "It is a question of law for the court to determine, from the materials before it, whether the conduct complained of may reasonably be found to be sufficiently outrageous as to permit recovery." *Hogan v. Forsyth County Club Co.*, 79 N.C. App. 483, 490, 340 S.E.2d 116, 121 (1986).

Based on our reading of the complaint, plaintiff's allegations that Ewell spoke negatively about him to one of plaintiff's clients do not demonstrate the level of "extreme and outrageous conduct" necessary to support an action for IIED. Thus, the trial court did not err.

C.  Tortious Interference with Contract
and with Prospective Advantage

**[9]** Plaintiff also argues his claims for tortious interference with contract and with prospective advantage against Ewell in his individual capacity were improperly dismissed by the trial court.

The elements of tortious interference with contract are as follows:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

*United Laboratories, Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988). "In order to maintain an action for tortious interference with prospective advantage, Plaintiff must show that Defendants induced a third party to refrain from entering into a contract with Plaintiff without justification. Additionally, Plaintiff must show that the contract would have ensued but for Defendants' interference." *DaimlerChrysler Corp. v. Kirkhart*, 148 N.C. App. 572, 585, 561 S.E.2d 276, 286, (citing *Cameron v. New Hanover Memorial Hospital*, 58 N.C. App. 414, 440, 293 S.E.2d 901, 917 (1982)), *temporary stay allowed*, 355 N.C. 284, 560 S.E.2d 798 (2002).

Both of these claims require Ewell's interference to be "without justification." This Court has held that in order to establish this element, plaintiff's "complaint must admit of no motive for interference other than malice." *Filmar Racing, Inc. v. Stewart*, 141 N.C. App. 668, 674, 541 S.E.2d 733, 738 (2001). With respect to both claims in plaintiff's complaint, he alleged that Ewell's comment to one of plaintiff's clients that she "could do better" than hiring plaintiff induced that client to terminate her contract with plaintiff. However, this allegation simply expresses Ewell's subjective view regarding plaintiff's abilities and does not express the malicious motive required by these torts. Therefore, the court did not err in granting summary judgment on these claims against Ewell.

IV.

[10] The final issue presented to this Court is whether the trial court erred in granting summary judgment because there were no genuine issues of material fact by which to allow plaintiff's claim against the City for violation of his rights to due process and equal protection as enforced by Title 42, Section 1983 of the United States Code ("Section 1983")[2] and Article I, Section 19 of the North Carolina Constitution to

---

2. Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes

go forward. Specifically, plaintiff contends he has been denied due process and equal protection of the law because the City asserted governmental immunity in his case in an effort not to pay damages for his claims, while customarily waiving it for similarly situated individuals. The City contends that this claim is barred by *res judicata* because the middle district court previously dismissed plaintiff's federal claim based on Section 1983.

The doctrine of *res judicata* was developed by the Courts "for the dual purposes of protecting litigants from the burden of relitigating previously decided matters and promoting judicial economy by preventing needless litigation." *Bockweg v. Anderson*, 333 N.C. 486, 491, 428 S.E.2d 157, 161 (1993). "*Res judicata* precludes a second suit involving the same claim between the same parties or those in privity with them when there has been a final judgment on the merits in a prior action in a court of competent jurisdiction." *Little v. Hamel*, 134 N.C. App. 485, 487, 517 S.E.2d 901, 902 (1999). "The defense of res judicata may not be avoided by shifting legal theories or asserting a new or different ground for relief." *Rodgers Builders v. McQueen*, 76 N.C. App. 16, 30, 331 S.E.2d 726, 735 (1985).

Although plaintiff's prior and current due process and equal protection claims were brought under Section 1983 and against the same party, these claims were based on different factual and legal issues. The prior claim related to plaintiff's continued employment and job reassignment with the DPD, which required the court to consider the facts and circumstances prior to plaintiff's retirement. The current claim related to the City's actions with respect to plaintiff's tort claims filed after his retirement and whether those claims were treated any differently by the City from claims raised by similarly situated individuals. Thus, plaintiff's current claim under Section 1983 is not barred by *res judicata*.

[11] Nevertheless, we conclude the trial court did not err in granting summary judgment on plaintiff's claim for violation of his rights to due process and equal protection. Plaintiff made the following allegations with respect to this claim against the City:

> 86. The City's custom and practice of paying damages in some tort claims asserted against it, while refusing to pay damages

to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C.A. § 1983 (2002).

to Plaintiff Beck, is unconstitutional, as it denies Plaintiff Beck's right to due process and equal protection under Article I, Section 19 of the North Carolina Constitution.

87. Plaintiff Beck has been damaged by the denial of his constitutional rights by the City, and he is entitled to compensation for said damages pursuant to Article I, Section 19 of the North Carolina Constitution and 42 U.S.C.A. Section 1983.

These allegations, even when viewed in the light most favorable to plaintiff, are insufficient to establish that the City's actions were so arbitrary and capricious as to violate plaintiff's rights to due process and equal protection. *See generally Dobrowolska v. Wall,* 138 N.C. App. 1, 530 S.E.2d 590, *disc. review allowed,* 352 N.C. 588, 544 S.E.2d 778 (2000), *disc. review improvidently allowed in part; appeal dismissed ex mero motu in part,* 355 N.C. 205, 558 S.E.2d 174 (2002). Plaintiff's assignment of error is therefore overruled because his complaint fails to indicate genuine issues of material fact regarding the City's refusal to pay damages for his claims.

For the aforementioned reasons, we conclude that the trial court did not err in granting defendants' motion to dismiss all of plaintiff's claims.

Affirmed.

Judges GREENE and TIMMONS-GOODSON concur.